FILED by _____ D.C.

FEB 1 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA.- MIAMI

## — *PETITION FOR REDRESS OF GRIEVANCES*

TO THE OFFICES OF THE U.S. MAGISTRATE, U.S. ATTORNEY, AND FEDERAL BUREAU OF INVESTIGATION
for presentation to the U.S. Grand Jury, Marshall, Supreme Court, House Judiciary Committee, Senate Judiciary Committee, and President

IN THE JUDICIAL DISTRICT OF
_____Florida_____ AT _Miami_____

} **Jurisdiction:** Common Law & Equity (commercial)
} **Ref:** 18 USC 241 & 242; 42 USC 1983, 1985, 1986

**UNITED STATES OF AMERICA** )
    ex rel.: taken upon information provided by )
Karl Alan Schonwalder a.k.a. Schoenwalder ____, )
for Karl Alan Schonwalder a.k.a. Schoenwalder ____,)
              Plaintiff / Relater / Victim, )
**VS.** )
Village of Pinecrest, Inc., Craig Harvey, )
Sergio Izaguirre, Phillip Martin, Ivan Osores, )
Gary Spence, James Bridges, John R. Hohensee )
Jason Cohen,  Alexandra Martinez, Juan Suarez, )
Cindy Lerner,  Derrick Bowman, Reynaldo Poveda, )
Sigfredo Badillo, Maikel Rodriguez, Heather Setter, )
Linda Isserlis Klein (aka Linda Carol Klein) )
Judy Ann Nichols, )
AND ANY UNKNOWN OTHERS )
       Defendants / Obligated Parties / Offenders. )

**12-CV-20398-SEITZ/SIMONTON**

Case Number _____

**CRIMINAL COMPLAINT,
CERTIFICATION, AND
BRIEF OF INFORMATION**

Reference Case:
Florida- Village of Pinecrest Police
Department Case Nos. 1003318; 1003360

The above named Defendants are accused of *Conspiracy to Deprive Rights Under Color Of Law,* in violation of the U.S. Constitution and laws that they are obligated to support and defend. The undersigned certifies and relates all known information in support of this complaint as follows:

On or about _August 8, 2010_ , through _____August 12, 2010_____ , on/at/near the city of _Pinecrest_ , county of _Dade_ , State of _Florida_ , and elsewhere, the above named Defendants DID UNLAWFULLY conspire to injure, oppress, threaten, intimidate and otherwise act under color of law to willfully subject the above named Victim to ☒ false arrest, ☒ false imprisonment, ☒ excessive use of force, ☐ malicious prosecution, ☐ maliciously clouding title, ☒ theft of property, ☐ wire fraud, ☐ mail fraud, ☐ threats by mail, and other wrongs specified in the attached certification, *Memorandum of Fact, Agreement and Law.* The commission, neglect, and refusal to prevent or aid in preventing the commission of such wrongful acts while having the knowledge and ability to do so, constitutes a deprivation of the free exercise and enjoyment of certain rights, privileges, and immunities secured and protected by the Constitution and laws.

Each and every Defendant identified in the attached certification(s), without excuse or justification in violation of each item number circled below, **COMMITTED AS FOLLOWS:**

Petition for Redress of Grievances - Pinecrest

THE FOLLOWING U.S. CONSTITUTIONAL
PRECEPTS HAVE BEEN SIMPLIFIED AND
CODED AS SHOWN IN THIS BOX:

```
101/OC - Obligation of Contracts (EXAMPLE)
**.)Q Clause 1 AM14.1/EP - Equal Protection
*.)Q Section 10 *.)))Q Section 1
.)Q Article 1 .))))))Q Amendment 14
```

## BASIC RIGHTS
1. **AM1/FR** - No law shall be made limiting freedom of religion and how it is applied to life.
2. **AM6/AC** - "[T]he accused shall enjoy the right... to have the assistance of Counsel for his defense."
3. **AM13.1/S, IS** - No law-abiding person shall be forced to do anything they do not want to do.
4. **AM1/FS** - No law shall limit the freedom of speech - people can say whatever they believe - especially after agreeing to be conscience bound to tell the truth, the whole truth and nothing but the truth.
5. **AM1/FP** - No law shall limit freedom of the press; freedom to express ideas in writing or printing.

## HONEST, FAIR, AND EQUAL TREATMENT OF ALL
6. **AM6/INFO** - The accused has a right to be informed of how, why, and for what they are being prosecuted.
7. **AM6/WA** - The accused have a right be confronted by all witnesses against them.
8. **AM6/WF** - The accused have the right to obtain all people, information, and materials in their favor.
9. **AM6/PT** - The threat of jail invokes the right to a public trial where friends may come to watch.
10. **AM5/IND** - No one shall be held to answer for any serious crime without a Grand Jury.
11. **AM14.1/CUS** - People are born or naturalized as U.S. subject citizens only with their full consent.
12. **AM14.1/CP, CI** - No state shall make or enforce any law limiting guaranteed rights.
13. **AM14.1/EP** - No state shall deny to anyone the equal protection of the laws.
14. **197/TN** - "No title of nobility shall be granted by the United States," to set anyone (Honor, Esquire, etc.) above the Common Man; therefore, everyone shall receive equal protection and restriction of law.
15. **101/TN** - "No state shall... grant any title of nobility," set anyone (Honor, Esquire, etc.) above the Common Man, or deprive anyone of anything without equal protection and restriction of law.
16. **421/UP, UI** - People of each state can do anything that is allowed in any other state.
17. **411/ARP** - No state shall refuse to acknowledge the actions and records of other states.

## REASONABLE ENFORCEMENT OF LAW
18. **AM4/PS** - No unwarranted searches or seizures of any person, place, or thing shall occur.
19. **AM4/W, PC** - No "Search Warrant" shall be acted upon without serving the written descriptive notice and supporting affidavit to the people being violated.
20. **101/OC** - No state shall pass any law impairing the obligation of contracts.

## DUE PROCESS(ACTION/REACTION THAT PROVIDES EQUAL JUSTICE FOR ALL)
21. **AM5/DP** - No one shall be deprived of anything without due process of law.
22. **AM14/DP** - No state shall deprive anyone of anything without due process of law.
23. **192/HC** - No one shall be held against their will without just cause (Writ of Habeas Corpus).
24. **322/SCJ** - Whenever a State is the Plaintiff, the supreme Court shall have original Jurisdiction.

## REASONABLE GOVERNMENT BEHAVIOR AND CONTROL
25. **193/XL** - No ex post facto law shall be passed (no retroactive law for something done previously).
26. **101/XL** - No state shall pass any ex post facto law (no retroactive law for something done previously).
27. **411/CPE** - Congress may prescribe the effect of state acts, records, and judicial proceedings.
28. **AM5/DJ** - No one shall suffer more than once for the same offense (Double Jeopardy).
29. **101/TAC** - "No state shall enter into any treaty, alliance, or confederation;" therefore, no state shall associate, collaborate or conspire to engage in the deprivation of any rights.
30. **101/LMR** - "No state shall... grant letters of marque and reprisal," therefore, no state shall authorize or engage in any act of forcefully going and taking anything of value without due process of law.
31. **AM8/XB** - No excessive bail shall be required - bail shall be proportionate to the crime and the accused.
32. **AM8/XF** - No excessive fines shall be imposed - fines shall be proportionate to crime and the convicted.
33. **AM8/CP** - No cruel punishment or unwanted treatment to modify lawful behavior shall be inflicted on anyone.
34. **AM8/UP** - No unusual punishment shall be inflicted - sentencing shall be consistent with the crime.

## PROTECTIONS AGAINST A SECRET GOVERNMENT - COMPELS HONESTY
35. **311/GB** - Judges shall hold their offices only during good behavior (lawful, patient, dignified, courteous).
36. **AM7/JT** - All suits not involving the threat of jail, where the value exceeds $20.00, shall be tried by jury.
37. **AM6/ST** - All prosecutions involving the threat of a fine or confinement shall be speedy.
38. **AM6/PT** - All prosecutions involving the threat of a fine or confinement shall be public.

39. **323/JT** - All prosecutions involving the threat of a fine or confinement shall be tried by jury.
40. **323/TIS** - Trial shall be held in the State where the crime was said to have been committed.
41. **AM6/IJT** - A jury must impartially rule on the facts; even ruling against any law they believe inappropriate.
42. **AM6/JSD** - A jury must be of the State and district where the crime was said to have been committed.
43. **AM6/DPA** - The district shall have been previously ascertained by law to insure a proper sampling of jurors.
44. **101/GS, TD** - Nothing but gold or silver coin may be required by any State in payment of debts.
45. **101/GS, TD** - Nothing but gold or silver coin may be offered by any State in payment of debts.
46. **101/CM** - No state is allowed to coin or print money.
47. **101/EBC** - No state is allowed to print anything to be used in the place of money.
48. **101/OC** - No state shall weaken the dollar bill's obligation to be exchangeable for silver or gold.
49. **185/CM** - Only Congress can coin money (not the Federal Reserve Bank).
50. **185/NM** - Congress has valued money at 412.5 grains of standard silver (or equivalent gold) to the dollar. (Federal Reserve Notes don't promise silver or gold; they are unlawful and cannot be used in transactions with the Government; payment of taxes, bail, fees, court costs, etc.).
51. **186/PC** - Printing money without lawful authorization is counterfeiting.
52. **431/NNS** - No independent or multi-jurisdictional governing agency shall be formed (or act) without the Consent of all Legislative Bodies involved.
53. **331/TAU** - No controlling agency shall belligerently harass anyone (mixed war / treason).
54. **111/SP** - Only Congress has the power to make laws.
55. **311/SP** - Only courts can decide punishments and rewards with regard to the law.

## PROTECTIONS AGAINST GOVERNMENT DOMINATING YOUR LIFE

56. **AM5/WAH** - No one shall be forced to say or do anything for any reason that can be used against them.
57. **AM3/QS** - No public servant shall be housed on private property without consent of the owner, on public property without consent of the public, or in a lawful manner in time of war. (Quartering Soldiers)
58. **193/BA** - No person or group can make a law, judge on it, and punish under it for no wrong-doing.
59. **101/BA** - No State shall allow any person or group to make a law, judge on it, and punish under it for doing no wrong. (Bill of Pains and Penalties)

## IF SOMETHING IS WRONG, GOVERNMENT MUST DO SOMETHING ABOUT IT

60. **AM14.4/PDO** - No public debt or obligation (taxes, fines, fees, penalties, bills, etc,) shall be assumed or paid for unlawful purposes.
61. **196/NUW** - No money may be withdrawn from the public treasury for unlawful purposes.
62. **197EOT** - No one in public office shall receive any personal gain from a foreign jurisdiction.
63. **AM16/TX** - Congress has the power to lay and collect certain taxes for lawful purposes.
64. **AM5/JC** - No one shall give up or lose anything for public gain without just compensation.
65. **AM1/PA, RG** - No law shall restrict peaceable assembly to ask Government to respect rights.
66. **AM24/VPT** - The right to vote may not be denied to anyone because they fail to pay taxes.
67. **AM9/ER** - Rights are innumerable and shall be retained by the people at large.
68. **AM10/PR** - All government power comes from the consent of the people governed.
69. **411/GRG** - The U.S. guarantees a system of laws to protect the majority AND the minority.
70. **612/SL** - The Constitution for the United States of America, along with its conforming Laws and Treaties, Is supreme over the Constitution or Laws of any State.
71. **613/BO** - All lawmakers, court officials, and enforcement/executive officers are to be bound by Oath or Affirmation to support the Constitution for the United States of America.
72. **218/OATH** - The President is to be bound by Oath or Affirmation to "faithfully execute" his office and to "preserve, protect and defend the Constitution of the United States."
73. **231/GX** - The President "shall take care that the Laws be faithfully executed [enforced]."
74. **612/JB** - All judges are bound by oath to support the U.S. Constitution over any State Constitution or Laws.
75. **441/PAI** - The U.S. shall protect against any attack upon rights of the majority AND minority.
76. **441/PADV** - The U.S. shall protect against local attack upon rights of the majority AND minority.
77. **AM2/KBA** - The right of people to keep and bear arms shall never be limited.
78. **AM14.3/HO, IR** - No one shall hold office who violates their oath of office or commits treason.
79. **321/JUC** - U.S. judicial power extends to all cases involving its Constitution, Laws or Treaties.
80. **321/JUP** - U.S. judicial power extends to any case involving the United States as a party.



**TITLE 18 SECTION 241 (18 USC 241) - CONSPIRACY AGAINST THE RIGHTS OF CITIZENS;**
If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured - they shall be fined not more than $10,000 or imprisoned not more than 10 years or both: and if death results they shall be subject to imprisonment for any term of years or for life.

**TITLE 18 SECTION 242 (18 USC 242) - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW;**
Whoever, under color of any law, statute, ordinance, regulation, or custom, wilfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

THEREFORE, it is incumbent upon the United States of America to prosecute for fraud (drawing a wage for disservice) and misprision (misuse of public office), and other criminal acts described herein.

Ledger of Obligation    *SEE Attached "Claim for Damages"*

THE COMMERCIAL VALUE FOR EACH COUNT OF THIS COMPLAINT IS $ _____ **10,000.00**

TIMES THE NUMBER OF COUNTS CIRCLED IN THIS COMPLAINT    x _____

= $ _____

TIMES THE NUMBER OF KNOWN CONSPIRATORS INVOLVED    x _____

TOTAL FINE OR RESTITUTION DUE BOTH JOINTLY AND SEVERELY = $ *3,660,000.00*

(*Three Million Six Hundred Sixty thousand XX/₁₀₀* ——— **DOLLARS)**

**THIS COMPLAINT IS AN AFFIDAVIT OF OBLIGATION IN THE NORMAL COMMERCIAL SENSE AND AS SUCH IS A SECURITY REPRESENTING ACCOUNTS RECEIVABLE. ANY FAILURE OR REFUSAL TO PROSECUTE RELEASES JURISDICTION TO THE VICTIM.**

On this *25* day of *July*, in the year of our Messiah *2011*, before the undersigned witnesses *at Palm Beach county, Florida*, the undersigned Signer acknowledges the foregoing to be true, correct and certain, materially complete, relevant and not misleading; accuses the above named defendants of having committed the above offenses contrary to law, and in violation of their pledge to the U.S. Constitution: and hereby declares them to be under arrest, the actual physical arrest to be made by a U.S. Marshall (See Title 42, Sections 1983-1989). **ANYONE MAKING AN ARREST HAS ALL THE POWER AND PROTECTION OF LAW THAT ANY PEACE OFFICER WOULD HAVE (101/TN, EP, 197/TN, EP).**

Complainant/Relator/Signor          Witness          Witness  *Shelley Fuerstenau*
Mail to:  *Karl Alan Schonwalder*          *RICHARD FUERSTENAU*
*c/o 9115-236 th St SW, Ste B*          (Please print name below each signature)
*Edmonds  Washington*
*With out the United States*

Although this affidavit does not need to be notarized, a notary public may join the other witness.

_____
Notary Public as Amicus Curiae (optional)

Petition for Redress of Grievances - Pinecrest                    Page 4 of 4

## MEMORANDUM OF FACT, AGREEMENT, AND LAW

The undersigned Signer makes the following Categorical Statement of Fact by this Certification:

1. On or about June 22, 2010, Debi, my wife, and I signed a contract, SERVICES FOR RENT AGREEMENT WITH KARL AND DEBI ALAN...(hereinafter: Agreement) to rent 9200 SW 71 Avenue, Miami, Florida (hereinafter: #9200 house) (Exhibit – 1).

2. The sleeping quarters location changed to the 9220 property owned by Judy Ann Nichols as it would be more convenient for both parties.

3. The Agreement was also signed by Linda Isserlis Klein and Judy Ann Nichols who both lived next door at 9200 SW 71 Avenue (hereinafter #9200 house), Miami, Florida.

4. The Agreement has a clause for a 2 week notice of cancellation and also required us to prepare meals each day, among other things, for Linda and Judy.

5. Upon the second day after moving in, I again went to the #9200 house to tell Linda and Judy that the morning meal was ready for them at our #9220 house next door. Linda replied that she wanted breakfast in bed.

6. I told Linda that we would not be serving breakfast in bed since she is not infirmed.

7. Our son Levi and I did some light work around the two houses that day as we were informed that they asked the groundskeeper, named Carlito, to leave.

8. Carlito was a rooming tenant at #9200 house whose duties (we were told by Linda) were 10-15 hours a week of property maintenance at the #9220 and #9200 houses for his room rent.

9. One of my duties was to install a natural gas pipe line, gas pool/spa heater, gas hurricane generator, generator switching panel and electric wiring from the meter to the generator.

10. I was told by Linda that she had a licensed plumber and licensed electrician looking at it.

11. During the second week I requested materials for the natural gas line and hurricane gas electric generator from Linda.

12. Linda seemed to be the head of both house and projects.

13. Linda insisted that I change our previously agreed schedule to prepare for an up and coming, first ever, event (A Community Of Believers) where many dignitary's were to come together to discuss a future plan for community works. (Hereinafter: Event)

14. I agreed to do it as a courtesy and Linda delegated much work orders to me and I had to have Levi help me exhaustively.

15. Levi and I put in over 40 hours each per week over the next two weeks on the two properties as a courtesy above and beyond my contractual obligation that I never expected any compensation for. We were pruning trees, cutting lawns, cutting hedges, cleaning pools, cleaning spas, power washing building exterior walls and ceilings, washing windows, installing new ornamental garden plants, applying mulch, etc

16. During the week of July 17-23, 2010 Debi prepared many food items for the Event. as part of our agreement.

17. Debi also prepared meals and detox preparations for Linda & Judy per our agreement.

18. On or about Thursday July 22 we were told by Linda that we must be servants for the Event Friday evening and Saturday on their Sabbath day as it was not our Sabbath day.

19. We were obedient servants per our contract serving all the guests without complaint.

20. On July 21, 2010 I delivered an Addendum/Amendment (Exhibit #2) giving two weeks notice for changes to our contract as per our original Agreement. These changes were necessary due to:
    a. being over-worked beyond the 10 – 15 hours stated by Linda Klein (see #7 above)
    b. Judy and Linda wanting personal slaves attending their every need,
    c. finding out that Linda and Judy had no intention of becoming responsible for a wellness center at there property,
    d. Judy and Linda only wanted a financial position in the wellness center.

21. On July 22, 2010 I asked Linda if Judy and she signed the Addendum/Amendment or need to discuss any part of it. Linda said that she has no time to look at the document and would not have any time

soon. I replied saying, "then here is my Notice Of Cancellation (hereinafter: NOC) of our contract in two weeks as per our original agreement" and handed her the signed NOC (Exhibit #3).

22. I then told Linda that I will continue to do the work of the Natural Gas Line, Electric Service, and Tiki Roof over the next two weeks and do my best to finish the projects so long as materials are promptly available and the ditches are dug and additional laborer needs met by other hirelings.

23. I did the necessary work as needed on the pool to keep it chlorinated at our house and trash removals.

24. On July 24, 2010 I received a Notice To Vacate (hereinafter NTV(Exhibit #4)) giving us two weeks to vacate the premises.

25. I accepted the NTV and agreed with Linda that we would surely move out.

26. Over the next two weeks the project for the natural gas and electric service went very slow on Linda's behalf.

27. I asked for electrical supplies and Linda said she needed time and money to get them.

28. Linda ordered me to work on the natural gas pipe line as she had the pipe already there.

29. I worked full time working on the electric and gas lines where I could and when I could and could not do any maintenance elsewhere on the property.

30. The 20' long gas pipes had been on the ground for about five years and needed the threads cut off and rethreaded.

31. Linda had to go find a pipe threading machine and came back empty that day.

32. Linda went the next day and procured a pipe threading machine and fittings.

33. The ditch machine arrived a day late.

34. The ditch machine operator arrived very late in the afternoon and quit soon after arriving.

35. Another ditch machine operator arrived the next day and did well until he cut through the gas company main feed line and had to stop working until the next day while the gas company repaired the line.

36. The ditch machine operator arrived the next day and completed the digging.

37. A couple days later a man showed up to drill a hole in the concrete wall causing more delays.

38. I encountered many delays for materials for the natural gas hurricane electric generator project, too.

39. Even with all the delays, I finished the electric service and gas pipe applications a day early.

40. I then asked Linda if the Tiki roof help was arriving the next day, and letting her know it will be my last day.

41. Linda said that the man hired to help me had to rent a piece of equipment.

42. I reiterated to Linda that it was my last day and that we would be packing up and moving out on Saturday (two days after my last day)

43. Linda said that she knew that.

44. The next day came and no one showed up for the Tiki roof repairs so Debi, Levi & I started to pack boxes and prepare to vacate the premises.

45. Friday August 6, 2010 I contacted Linda Klein and told her I will be leaving the next day, Saturday August 7, and need to have her car moved.

46. Linda said she would move it.

47. Around Midnight August 6, Linda came over and posted a letter on the patio door saying that we would not be leaving Saturday as she and Judy needed to discuss something and would have to wait until after their Sabbath day to talk.

48. This would put us out to Sunday and cause trouble in the arrangements I made to have a truck arrive Saturday and take it to a storage area that would be closed on Sunday.

49. Saturday August 7, I went to Linda's house to have her move her van as the scheduled truck and trailer destination were arranged for Saturday.

50. There was no answer at Linda's and her phone was off the hook.

51. I had to cancel the trucker from picking up the trailer.

52. Sunday August 8th around 9:30AM, I received a call from Linda requesting for her, Judy and a Pastor Ken[?] to come over to discuss something.

53. I told her that we were just having breakfast and then having our prayer time with Yahuah.

54. I said that around 12 noon would be better.

55. Linda insisted in putting Pastor Ken on the phone.

56. I talked with Ken a little bit and told him that the schedules for the trucker and destination location were made for Saturday and that Linda caused that to be terminated.

57. I told Ken that the next timing would be the next Saturday.

58. I then made arrangements for Ken to come over at 10:30 AM and I would call back.
59. I called Linda back at 10:33 for Ken to come over.
60. Linda said that he had left.
61. Later that afternoon, three Village of Pinecrest police officers came to our front door.
62. They were there because Linda Klein and Judy Nichols made a complaint for Theft of Property falsely accusing me of the theft.
63. I stepped outside and answered some questions of theirs about the stolen property.
64. I told them that the property they are looking for is in the locked garage and storage garden sheds that Linda and Judy have the keys for them.
65. The officers asked for my name and I gave them my Given Name and Sur Name.
66. The police officers ordered me to stay in the house and not leave while they checked my name in their computer for any criminal records. I was not free to leave.
67. The police said they wanted to check my name and ordered me not to leave the property.
68. The three officers went back to their police cars on the property next door.
69. Two police officers returned and said they need additional ID as my name was not in the computers.
70. I told them I am glad it was not in the computers but they insisted that everyone's name must be in the computer.
71. I told them I am a foreign national to the United States, a man born on New Jersey and am not in their computers.
72. The police officers then insisted on another form of ID or Social Security Number (SSN).
73. I told them I do not have an SSN but they insisted that I must have one from birth.
74. I told them I sent a letter rescinding the number and returned the SSN card back to the Social Security Administration.
75. The officers then threatened me that they would have to take me to jail for finger printing and photos to ID me (coercion).
76. I told them that that will be unlawful as the law says that I have only to provide my name and one has to be convicted of a felony to have photos and finger prints taken.
77. The two officers again threaten me with going to jail and coerced me into showing them the Letter of Rescission to the Social Security Administration stored in my cargo trailer file cabinet. This was a violation of Fed Law 42U.S.C.408-7(a)(8).
78. They took that social security number and name from the document and ordered me to go back in the house and not to leave the house.
79. Three officers came back after a while and arrested me, handcuffed me photographed my face in two images and placed me in a police car (False Arrest, Theft of property – my photograph).
80. I suggested to the officer in the car that he have the law at the station when we arrive that allows them to photograph and fingerprint me before conviction of a felony.
81. The officer got out of the car and went to talk to his fellow officer in front of the police car I was in.
82. I noticed the officer making and taking calls on his cell phone and police radio.
83. The officer returned about 50 minutes to an hour and said I am being released as no crime was committed, there is not enough evidence for arrest and there is no law saying they can take me in for identification purposes.
84. The two officers walked me from Linda's house to Judy's house handcuffed (defamation of character).
85. The two officers removed the handcuffs outside the front door of the house we were staying in and I was reunited with my wife and son who were in the house.
86. Linda Isserlis Klein and Judy Ann Nichols plotted evil upon the Karl Alan family and conspired to have me falsely arrested and to defame my character (false witness, Exodus 20:16; Deu 5:20; defamation of character Psalm 31:13; Proverbs 10:18).
87. August 10, 2010, Judy Nichols came in the garage entry door without knocking, dressed in a bath robe only, but open drawers to cabinets hindered her entry. Our 14 year old son Levi was in the house and Judy coerced him to open the door.
88. Judy went in the northwest bedroom and took a shower.
89. Our son ran out to our storage trailer as Debi & I were packing to inform us of the incident with Judy.
90. Debi, Levi and I returned to the house and I called the police for an assist.
91. One police officer arrived and I explained the incident. The policeman went next door to Linda's house and talked to Judy and Linda for more than an hour.

92. August 11, 2010, in the late afternoon, up to 12 police officers converged on Debi, Levi and I, some with guns drawn and aimed at us running from Linda Klein's property as we were heading out the front entry door to walk to the book store and they arrested us.

93. The Village of Pinecrest police officers arrested us for purported trespass (trespass = civil court matter), ordered us to sit on the ground with hands behind our heads.

94. They then separated our son Levi from us, questioned us and interrogated and took photographs of our 14 year young son Levi.

95. They then ordered us back into the house.

96. They then ordered us to pack the rest of our belongings into our cargo trailer and leave the premises immediately.

97. This constitutes personal eviction from Linda Klein and Judy Nichols utilizing taxpayer paid police officers for private gain to carry out their conspiracy to commit personal eviction.

98. They told us we must remove the cargo trailer that evening or it would be towed and impounded. This was without court order nor authority to permit such.

99. Later that evening the police officers withdrew the threat of towing and impounding the cargo trailer as it became dark when we finished packing all of our personal belongings into our cargo trailer but ordered us to have it removed the next day.

100. Linda Klein and Judy Nichols plotted evil against the Karl Alan family and conspired to have us falsely arrested for criminal trespass and to defame our character (Psalms 31:13; 35:4; 36:4; 41:7-9; Pro 6:14; 16:27; 16:30; 24:8; Micah 2:1; Zechariah 7:10).

101. We left the property on foot and went to take the train to West Palm Beach to stay with friends but missed the train due to the late hour.

102. We then went to the Hampton Inn in Pinecrest to stay the night costing out of pocket money damages.

103. August 12, 2010, I had a friend bring a truck to tow the cargo trailer up to Palm Beach county. Our friend arrived around 6:00 PM and we went to tow the trailer off the property. We arrived at the property and called the Village of Pinecrest Police to have a Patrolman come for an assist as required by the Village police. We hooked up the trailer to the truck and left the property with no incident.

This Signer certifies that the foregoing is true, correct and certain, materially complete, relevant and not misleading on this _2_ day of _May_ in the year of our Messiah _2011_ at _Palm Beach county_, on _Florida_ ~~State~~ before the ~~undersigned~~ witnesses.

Signer: ~~Karl-Alan~~
House of Schoenwalder
Mail:   c/o 9115-236th Street Southwest, Suit B
Edmonton, Washington 98026

Witness: _____

Witness: _Felicia Martin_

_Danny McGuire_     PRINT NAME BELOW EACH SIGNATURE     _Felicia Martin_

**Services for Rent Agreement with Karl and Debi Alan (including son, Levi) Regarding services to  Be Provided to Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave., Miami, FL 33156**

Responsibilities - KARL:
- Initial special jobs (to be completed within the first 5 weeks)
  - Install a/c compressor
  - Install pool/spa heater, relocating propane tank to comply with code
  - Connect generator
  - Repair and reinforce tiki hut
  - Plant garden and food bearing plants and trees in designated areas
- Ongoing duties:
  - Maintain exterior of both houses (keeping doors and walls clean, painting when necessary)
  - Maintain grounds, decks garden
  - Keep pools & hot tubs sparkling clean
  - Maintain all equipment in good working order
  - Shop for daily food, water, soap and paper goods for all occupants of both houses
    - (keeping the food cost down to $60 per person per week by purchasing cases at a discount as you represented you are able to do)
  - Empty trash; put cans out on Sunday & Wednesday nights; set up and maintain composting
  - Do all reasonable lifting, carrying and moving upon request
    - Clean Judy and Linda's cars inside and out, alternating one car per week
    - Storm preparation and clean-up afterwards

Ongoing Duties - DEBI:
- Prepare and serve all meals and snacks to all occupants of both houses
  - Prepare and serve food for special events
  - Do all clean up related to food
  - Oversee Karl with planting and growing garden
  - Pick food from garden
  - Help with cleaning or laundry chores when necessary or when Verna is unavailable
  - Shop for food for special events

Ongoing Duties - LEVI:
- Help parents as requested
- Perform any computer-related tasks as requested to his best abilities

Benefits to be received by the Alan Family in exchange for rendering above services:
- An enclosed place for parking their trailer
- A place to sleep and bathe
  - Initially at 9200 SW 71 Ave. (location subject to change at Linda Klein's discretion)
    - Karl & Debi in corner studio (between 8:00 p.m. and 6:30 a.m. only)
    - Levi in the small bed in Linda's office (between 8:00 p.m. and 7:00 a.m.)
    - Note: the breakfast room table at 9220 can be used for daytime computer work
- Use of washer and dryer at 9220 house
- Food for the first 5 weeks, starting 7/2/10
  - Continued provision of food plus opportunity for monetary gain contingent upon regular income from detox customers exceeding $8000 per month.

It is understood that from time to time the Alan family will need personal days or teaching days. This will be allowed provided that acceptable alternate arrangements are made for fulfilling their duties. Dates will be scheduled in advance. This Agreement may be modified by written addendum signed by all parties or can be canceled with two weeks notice from any party to the Agreement. It is understood that the Alans will have no guests or visitors unless specific prior approval has been given by Linda Klein. Effective date: July 2, 2010  Signatures below indicate agreement with all terms herein.

_____     _____     _____     _____
Karl Alan                     Debi Alan                     Judy Nichols                  Linda Klein

**EXHIBIT - 1**

## Addendum/ Amendment

July 21, 2010

RE: Contract between Karl Alan, Debi Alan, Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave, Miami, Florida

This is our two week notice of ADDENDUM per the contract dated July 2, 2010 titled SERVICES FOR RENT AGREEMENT WITH KARL AND DEBI ALAN...

### Responsibilities – Karl & Debi
Prepare all meals and snacks to all occupants of both houses.
Prepare all food for special events.
Plant edible garden and harvest bounty thereof for the household.
Karl may help Levi with yard and building maintenance from time to time if his schedules permit, and be compensated at $20.00 hourly at ¼ hour increments.

### Responsibilities – Levi
Perform all light yard maintenance and light building maintenance and be compensated $10.00 hourly at ¼ hour increments (lawn cutting, weeding, tree and shrub trimming (within reach), pool and spa cleaning and chemical adjustments, minor repairs/minor painting).
Perform Wellness Center - Website building and maintenance and be compensated at $20/hour.

### Benefits:
Food: to be continued as long as they work at the Wellness Center.
Personal Allowance: $50 per week to Karl & Debi for personal allowance until wellness center exceeds $8000 per month from center patients.
Lodging: to be at the 9220 address in the Master Bedroom with private bath.

SIGNED AND DATED THIS 21st DAY OF JULY IN THE YEAR OF MESSIAH 2010 (Gregorian)

| | | | |
|---|---|---|---|
| Karl Alan | Debi Alan | Judy Nichols | Linda Klein |

**EXHIBIT - 2**

## **Notice of Cancellation**

July 19, 2010

RE: Contract between Karl Alan, Debi Alan, Linda Klein and Judy Nichols at 9200 ^& 9220 S.W. 71 Ave, Miami, Florida

This is our two week notice of cancellation to our signatures on the contract dated July 2, 2010 titled SERVICES FOR RENT AGREEMENT WITH KARL AND DEBI ALAN...

Karl Alan

Debi Alan

**EXHIBIT - 3**

# Notice to Vacate Premises

July 24, 2010

In response to the Notice of Cancellation dated July 22, 2010, received from Karl and Debi Alan, canceling the July 15, 2010 Services for Rent Agreement between Karl and Debi Alan, Judy Nichols and Linda Klein, TWO WEEKS NOTICE IS HEREBY GIVEN to the Alan family to vacate the premises at 9220 S.W. 71 Avenue, Miami, FL 33156, presently occupied by them under the terms of the above-referenced Services for Rent Agreement.

_____
Linda Klein

_____
Judy Nichols

**EXHIBIT - 4**

August 6, 2010

To Karl and Debi Alan

     Re: <u>Your failure to fulfill your obligations under the Services for Rent Agreement dated July 2, 2010 (copy attached)</u>

Dear Karl and Debi,

As you are both aware, this afternoon Karl informed me that he has no intention of completing work you and he had agreed to perform in exchange for 5 weeks of fully furnished housing, organic food, water and electricity for your family. I want to set the record straight:

I have today asked you to stay on a couple more days to complete the work that you entered into a covenant to provide. Regrettably, you both claimed that you have no duty to complete the promised work on the grounds that you did not complete it within the 5-week timeframe (which you had agreed was ample). The fact is that Karl chose not to begin work on any of the "Initial special jobs" listed in the Agreement until the fourth week of the 5-week Agreement – an agreement between Judy, myself, and the two of you, which we all signed on July 2nd *after you had revised the terms to suit you.* After signing that Agreement 35 days ago, Judy and I fulfilled our end of the bargain each and every week.

Now, you say that you are leaving tomorrow: (1) without completing the installation of the pool heater which the Agreement requires you to install; (2) without removing stains that you, yourself, made on the basketball court, which will now require repainting; (3) without repairing the courtyard screens that you, yourself, damaged; (4) without installing new posts for the chickee hut – not only is this repair part of **our** written agreement -- you, yourself, even **delivered** the new posts here so that you could install them. (You charged $40 for that **delivery**); (5) without repairing a **hot tub jet** that got pushed out of place when your **son, Levi,** used a pressure **washer** instead of a rag to clean the hot tub – you said **today that** repairing that **jet would** take you no more than an hour, yet you intend to leave it broken; (6) **without** moving the canopied 4-person swing back to the place in the yard from which you moved it. (7) without cleaning our swimming pools which are now sorely in need of cleaning due to your failure to clean them weekly as required by in the agreement you signed; (8) without cutting the lawn, a task you agreed in writing to perform weekly. Today is August 6th. You have neither cleaned the swimming pools **nor** cut the grass since July 22nd!

<u>**EXHIBIT - 5**</u>

No one other than God can hold you accountable --  You have been forced out of your Christian congregation; you have given up your U.S. citizenship; you have even "turned in" your social security numbers! Clearly, you have arranged your lives so that you are accountable to no one but God. I pray you will decide to do right by Him! You say that you "are not about money" yet you, Karl, have asked me to pay you $75 per hour to finish the work you started and agreed in writing that you would complete.

Not only have Judy and I fulfilled all that we promised you, we have given you more than we promised. Today, I spent many hours driving you places you wanted to go but had no way of accessing because your "car is in the shop." You have been claiming that ever since your arrival here! Why did you sign an agreement requiring you to do all the grocery shopping when you secretly knew that you have no means for fulfilling that duty unless Judy or I drove you?!  I have also supplied you and your family with <u>SIX</u> weeks of organic food, rather than five weeks as required by the terms of our written agreement. Our weekly food shopping dates were:

1. Saturday, July 3        Glaser – Coconut Grove
2. Saturday, July 10      Glaser – Coconut Grove
3. Saturday, July 17      Glaser – Coconut Grove
4. Tuesday, July 20       Glaser Farm
5. Tuesday, July 27       Glaser Farm
6. Tuesday, August 3     Whole Foods

Apart from the above, I purchased additional food for you and your family on July 6; July 15; July 17; July 18; July 21; July 22; and today, August 6.

You hold yourselves out to be children of God, so I pray that you will reconsider and decide to fulfill your obligations to Judy and me. That is without question the Godly thing to do.

I have prepared a checklist of items that were made available to you during your stay in Judy's house – items that you must return before you leave. I will not be available to review this list with you on the Sabbath, so you are hereby authorized to delay your departure until Sunday.

*Linda*

**EXHIBIT – 5 (pg2)**

## INCIDENT/INVESTIGATION REPORT

| | | |
|---|---|---|
| Agency Name<br>*Village Of Pinecrest Police Dept.* | | Case#<br>*10-03318* |
| ORI<br>*FL 0139200* | | Date / Time Reported<br>*08/08/2010  12:53  Sun*<br>Last Known Secure<br>*08/08/2010  10:00  Sun* |
| Location of Incident<br>*9200 Sw 71st Av, Village Of Pinecrest FL 33156-* | Premise Type<br>*Home Of Vic-single* | Zone/Tract<br>*1, 1833* | At Found<br>*08/08/2010  12:40  Sun* |

**INCIDENT DATA**

| | Crime Incident(s) | (Com) | Weapon / Tools  *NOT APPLICABLE* | | | Activity |
|---|---|---|---|---|---|---|
| #1 | *Petit Theft (Open)*<br>*LPO* | M | Entry | Exit | Security | |
| #2 | Crime Incident | (  ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |
| #3 | Crime Incident | (  ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |

**MO**

**VICTIM**

| # of Victims  *1* | Type:  INDIVIDUAL (NOT A LE OFFICER) | Injury:  None | | | | | Domestic: N | |
|---|---|---|---|---|---|---|---|---|
| V1 | Victim/Business Name (Last, First, Middle)<br>*KLEIN, LINDA ISSERLIS* | Victim of<br>Crime #<br>*1,* | DOB<br>*09/22/1942*<br>Age  *67* | Race<br>*W* | Sex<br>*F* | Relationship<br>To Offender | Resident Status<br>*Resident* | Military<br>Branch/Status |

| Home Address<br>*9200 SW 71ST AV , Village Of Pinecrest, FL 33156-* | | Home Phone<br>*305-666-7700* |
|---|---|---|
| Employer Name/Address | Business Phone | Mobile Phone |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHERS INVOLVED**

CODES:  V- Victim (Denote V2, V3)  O = Owner (if other than victim)  R = Reporting Person (if other than victim)

| | Type:  INDIVIDUAL (NOT A LE OFFICER) | | Injury: | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code<br>*IO* | Name (Last, First, Middle)<br>*NICHOLS, JUDY ANN* | Victim of<br>Crime # | DOB<br>*05/11/1962*<br>Age  *48* | Race<br>*W* | Sex<br>*F* | Relationship<br>To Offender | Resident Status<br>*Resident* | Military<br>Branch/Status |

| Home Address<br>*9220 Sw 71st Av Village Of Pinecrest, FL 33156* | | Home Phone<br>*305-665-7575* |
|---|---|---|
| Employer Name/Address | Business Phone | Mobile Phone |

| | Type:  INDIVIDUAL (NOT A LE OFFICER) | | Injury: | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code<br>*IO* | Name (Last, First, Middle)<br>*SCHOENWALDER, KARL ALAN* | Victim of<br>Crime # | DOB<br>*05/22/1952*<br>Age  *58* | Race<br>*W* | Sex<br>*M* | Relationship<br>To Offender | Resident Status<br>*Resident* | Military<br>Branch/Status |

| Home Address<br>*9220 Sw 71st Av  Pinecrest, FL 33156* | | Home Phone |
|---|---|---|
| Employer Name/Address<br>*SELF (HANDYMAN)* | Business Phone | Mobile Phone |

**PROPERTY**

L= Lost  S= Stolen  R= Recovered  D= Damaged  Z= Seized  B = Burned  C = Counterfeit / Forged  F = Found
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| *1* | *55* | *S* | *$150.00* | | *1* | *TOOLS - POWER & HAND* | *STHIL/Chainsaw* | |
| *1* | *55* | *S* | *$10.00* | | *1* | *TOOLS - POWER & HAND* | *HAMMER/Heavy* | |
| *1* | *55* | *S* | *$10.00* | | *1* | *TOOLS - POWER & HAND* | *MACHETE* | |
| *1* | *99* | *S* | *$10.00* | | *1* | *OTHER* | *WATER TEST KIT/Pool* | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Officer/ID#<br>*SPENCE, G. (GS1284)* | Outstanding Stolen Val (Total Stolen): $180.00  [$180.00] |
|---|---|
| Invest ID#<br>*(0)* | Supervisor<br>*BOWMAN, D. (DB1355)* |

**Status**

| Complainant Signature | Case Status<br>*Inactive*  *08/08/2010* | Case Disposition: | Page 1 |
|---|---|---|---|

# INCIDENT/INVESTIGATION REPORT
## Page 2

By: LARGAESPADA, RECORDS1

*Village Of Pinecrest Police Dept.*

Case# 10-03318

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |
|---|---|---|---|---|---|---|---|---|

| | UCR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
|---|---|---|---|---|---|---|
| D | | | | | | |
| R | | | | | | |
| U | | | | | | |
| G | | | | | | |
| S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers
*BOWMAN, D. (DB1355), IZAGUIRRE, S. (SI1372), MARTIN, P. (PM1363), OSORES, I. (IO1412)*

Suspect Hate / Bias Motivated: *Unknown (Offender's motivation not known)*

**N A R R A T I V E**

I ARRIVED AT THE LISTED ADDRESS AND SPOKE WITH HOMEOWNER LINDA KLEIN(V) IN REFERENCE TO THE THEFT OF HER PROPERTY. KLEIN STATED THAT AN UNKNOWN OFFENDER(S) STOLE THE LISTED ITEMS FROM HER HOME AND THE GARAGE OF HER NEIGHBOR JUDY NICHOLS(IO1). KLEIN ALSO STATED TO ME THAT SHE FEELS THAT KARL SHOENWALDER(IO2) IS INVOLVED IN THE THEFT OF HER PROPERTY.

KLEIN AND NICHOLS HAD ENTERED INTO A WRITTEN AGREEMENT WITH SHOENWALDER APPROXIMATELY A MONTH EARLIER, FOR WORK THAT NEEDED TO BE DONE ON KLEIN'S HOME. THE AGREEMENT STATED THAT SHOENWALDER WOULD COMPLETE VARIOUS REPAIRS ON KLEIN'S HOME IN EXCHANGE FOR HOUSING. SHOENWALDER MOVED INTO THE HOME OF NICHOLS WITH HIS WIFE AND 14 YEAR OLD SON, WHILE NICHOLS MOVED IN WITH KLEIN TO LIVE. KLEIN AND NICHOLS LIVE ADJACENT TO EACH OTHER AND HAVE BEEN FRIENDS FOR MANY YEARS.

AS THE WORK BEGAN ON KLEINS HOME, SHE BECAME UPSET WITH SHOENWALDER BECAUSE SHE FELT HE WAS NOT COMPLETING THE WORK ON TIME. KLEIN WAS CONSTANTLY HAVING TO REMIND SHOENWALDER THAT HIS WORK WAS INCOMPLETE AND HE WAS NOT KEEPING UP HIS SIDE OF THE AGREEMENT. AS THE RELATIONSHIP BETWEEN KLEIN AND SHOENWALDER CONTINUED TO DETERIORATE, KLEIN BEGAN TO BECOME SUSPICIOUS OF SHOENWALDER. KLEIN THEN DECIDED TO INVENTORY THE TOOLS AND OTHER PROPERTY THAT SHOENWALDER WAS USING OR HAD ACCESS TO.

ONCE KLEIN HAD COMPLETED HER INVENTORY, SHE REALIZED THAT MULTIPLE ITEMS WERE MISSING AND APPROACHED SHOENWALDER WITH A LIST OF THE ITEMS. SHOENWALDER DENIED ANY INVOLVEMENT IN TAKING THE ITEMS. KLEIN GAVE ME A LIST OF 25 ITEMS THAT WERE MISSING IN WHICH SHE STATED SHOENWALDER WAS USING TO COMPLETE THE REPAIRS TO HER HOME. I TOOK THE LIST AND WENT TO NICHOLS HOME WERE SHOENWALDER WAS STAYING TO SEE IF HE KNEW WERE THE MISSING ITEMS WERE.

WHEN SHOENWALDER CAME TO THE FRONT DOOR I EXPLAINED TO HIM THE SITUATION AND ASKED HIM TO LOOK AT THE LIST. SHOENWALDER READ THE LIST AND STATED THAT HE KNEW WHERE THE MAJORITY OF THE ITEMS WERE LOCATED. SHOENWALDER THEN SHOWED ME THE LOCATION OF THE MISSING ITEMS. SHOENWALDER STATED THAT NEVER SAW OR USED AT ANY TIME THE REMAINING MISSING ITEMS.

AT THIS POINT I ASKED SHOENWALDER FOR HIS IDENTIFICATION FOR DOCUMENTATION PURPOSES. SHOENWALDER STATED TO ME THAT HE HAS NO IDENTIFICATION. I THEN ASKED HIS NAME AND DATE OF BIRTH, IN WHICH HE STATED KARL ALAN. WHEN I RAN HIS NAME WITH DISPATCH, THEY CAME BACK WITH NO

**INCIDENT/INVESTIGATION REPORT**

Narr. (cont.) OCA: 10-03318      *Village Of Pinecrest Police Dept.*      Page 3

INFORMATION. I WENT BACK TO SHOENWALDER AND ASKED HIM FOR HIS CORRECT NAME. HE STATED TO ME "YOU MEAN MY FAMILY NAME". HE THEN TOLD ME HIS FULL NAME IS KARL ALAN SHOENWALDER WITH THE SAME DATE OF BIRTH.

I ONCE AGAIN ASKED DISPATCH TO CHECK THE NEW INFORMATION I HAD, AND DISPATCH CAME BACK WITH NO INFORMATION. AT THIS POINT SERGEANT BOWMAN HAD ARRIVED ON SCENE AND HE WENT WITH ME TO GET THE INFORMATION FROM SHOENWALDER. I THEN EXPLAINED TO SHOENWALDER THAT IF I AM UNABLE TO DETERMINE HIS IDENTITY CORRECTLY THAT I WOULD HAVE TO TAKE HIM TO METRO DADE RECORDS AND HAVE HIM FINGERPRINTED TO DETERMINE HIS IDENTIFICATION.

THE EXPLANATION THAT SHOENWALDER GAVE ME FOR HIM NOT BEING IN THE SYSTEM WAS THAT HAD HE RETURNED ALL ITEMS HAVING TO DO WITH HIS IDENTIFICATION, INCLUDING HIS DRIVERS LICENSE, BIRTH CERTIFICATE AND SOCIAL SECURITY NUMBER. I ASKED SHOENWALDER FOR HIS SOCIAL SECURITY NUMBER ONE MORE TIME AND HE PROVIDED ME WITH DOCUMENTATION FROM THE STATE OF COLORADO SHOWING THE NAME HE GAVE ME WITH HIS SOCIAL SECURITY NUMBER.

I HAD DISPATCH RUN HIS NAME WITH SOCIAL SECURITY NUMBER AND IT STILL CAME BACK WITH NO RECORD FOUND. I WAS NOTIFIED BY SERGEANT BOWMAN TO TAKE SHOENWALDER TO METRO DADE RECORDS TO DETERMINE HIS IDENTIFICATION. I EXPLAINED TO SHOENWALDER THAT HE WAS NOT UNDER ARREST BUT THAT HE WAS BEING DETAINED IN ORDER TO DETERMINE HIS CORRECT IDENTITY.

I PLACED HANDCUFFS ON SHOENWALDER AND PUT HIM IN THE BACK OF MY PATROL CAR. I WAS THEN NOTIFIED BY SERGEANT BOWMAN VIA PHONE TO STAND BY, WHILE HE AND SERGEANT BADILLO RESEARCH THE SITUATION. THE SERGEANTS CONTACTED THE STATE ATTORNEYS OFFICE AND SERGEANT COHEN FOR CLARIFICATION ON TAKING SHOENWALDER TO METRO DADE FOR IDENTIFICATION. I WAS ADVISED BY SERGEANT COHEN THAT SINCE I DID NOT HAVE ENOUGH INFORMATION TO CHARGE SHOENWALDER WITH THE THEFT OF THE LISTED ITEMS, I COULD NOT DETAIN HIM FOR IDENTIFICATION PURPOSES.

I SPOKE WITH SERGEANT BOWMAN WHO ADVISED ME TO RELEASE SHOENWALDER, WHICH I DID. I RETURNED TO SPEAK ONCE AGAIN WITH KLEIN AND ADVISE HER THAT SHOENWALDER HAD SHOWN ME THE LOCATIONS OF MOST OF THE MISSING ITEMS. I SHOWED KLEIN THE LOCATION OF SOME OF THE ITEMS AND GAVE HER A CASE CARD.

# Incident Report Suspect List

*Village Of Pinecrest Police Dept.*

OCA: *10-03318*

| 1 | Name (Last, First, Middle)<br>*\* No name \** | | | | | Also Known As | | | | Home Address | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Business Address | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| DOB. | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State. |
|---|---|---|---|---|---|---|---|---|---|---|

| Scars, Marks, Tattoos, or other distinguishing features |
|---|

| *Reported Suspect Detail* | Suspect Age | Race<br>U | Sex<br>U | Eth | Height | Weight | | SSN |
|---|---|---|---|---|---|---|---|---|

| Weapon, Type | Feature | Make | Model | | Color | Caliber | Dir of Travel<br>Mode of Travel |
|---|---|---|---|---|---|---|---|

| VehYr/Make/Model | | Drs | Style | | Color | Lic/St | | VIN |
|---|---|---|---|---|---|---|---|---|

| Notes | Physical Char |
|---|---|

*UNKNOWN [08/11/2010 09:46, LARGAESPADA, 76, PCPD]*

## Incident Report Related Property List

*Village Of Pinecrest Police Dept.*

OCA: *10-03318*

**1**

| Property Description | | Make | Model | Caliber |
|---|---|---|---|---|
| *TOOLS - POWER & HAND* | | *STHIL* | *CHAINSAW* | |

| Color | Serial No. | Value | Qty | Unit | Jurisdiction |
|---|---|---|---|---|---|
| *Black* | | *$150.00* | *1.00* | | *Locally* |

| Status | Date | NIC # | State # | Local # | OAN |
|---|---|---|---|---|---|
| *Stolen* | *08/08/2010* | | | | |

| Name (Last, First, Middle) | DOB | Age | Race | Sex |
|---|---|---|---|---|
| *Klein, Linda Isserlis* | *09/22/1942* | *67* | *W* | *F* |

Notes
   *CHAINSAW*

**2**

| Property Description | | Make | Model | Caliber |
|---|---|---|---|---|
| *TOOLS - POWER & HAND* | | *HAMMER* | *HEAVY* | |

| Color | Serial No. | Value | Qty | Unit | Jurisdiction |
|---|---|---|---|---|---|
| | | *$10.00* | *1.00* | | *Locally* |

| Status | Date | NIC # | State # | Local # | OAN |
|---|---|---|---|---|---|
| *Stolen* | *08/08/2010* | | | | |

| Name (Last, First, Middle) | DOB | Age | Race | Sex |
|---|---|---|---|---|
| *Klein, Linda Isserlis* | *09/22/1942* | *67* | *W* | *F* |

Notes
   *HEAVY HAMMER*

**3**

| Property Description | | Make | Model | Caliber |
|---|---|---|---|---|
| *TOOLS - POWER & HAND* | | *MACHETE* | | |

| Color | Serial No. | Value | Qty | Unit | Jurisdiction |
|---|---|---|---|---|---|
| | | *$10.00* | *1.00* | | *Locally* |

| Status | Date | NIC # | State # | Local # | OAN |
|---|---|---|---|---|---|
| *Stolen* | *08/08/2010* | | | | |

| Name (Last, First, Middle) | DOB | Age | Race | Sex |
|---|---|---|---|---|
| *Klein, Linda Isserlis* | *09/22/1942* | *67* | *W* | *F* |

Notes
   *MACHETTE*

**4**

| Property Description | | Make | Model | Caliber |
|---|---|---|---|---|
| *OTHER* | | *WATER TEST KIT* | *POOL* | |

| Color | Serial No. | Value | Qty | Unit | Jurisdiction |
|---|---|---|---|---|---|
| | | *$10.00* | *1.00* | | *Locally* |

| Status | Date | NIC # | State # | Local # | OAN |
|---|---|---|---|---|---|
| *Stolen* | *08/08/2010* | | | | |

| Name (Last, First, Middle) | DOB | Age | Race | Sex |
|---|---|---|---|---|
| *Klein, Linda Isserlis* | *09/22/1942* | *67* | *W* | *F* |

Notes
   *POOL WATER TEST KIT*

# INCIDENT/INVESTIGATION REPORT

| | | |
|---|---|---|
| **Agency Name** Village Of Pinecrest Police Dept. | **Case#** 10-03360 | |
| **ORI** FL 0139200 | **Date / Time Reported** 08/11/2010  16:09 Wed | |
| | **Last Known Secure** 08/11/2010  16:09 Wed | |
| **Location of Incident** 9200 Sw 71st Av, Village Of Pinecrest FL 33156- | **Premise Type** Single Fam Residence-non | **Zone/Tract** 1, 1833 | **At Found** 08/11/2010  16:09 Wed |

## INCIDENT DATA

| | | | | |
|---|---|---|---|---|
| **#1** | **Crime Incident(s)** (Com) Trespass Warning TRW M | **Weapon / Tools** NOT APPLICABLE | | **Activity** |
| | | Entry | Exit | Security |
| **#2** | **Crime Incident** ( ) | **Weapon / Tools** | | **Activity** |
| | | Entry | Exit | Security |
| **#3** | **Crime Incident** ( ) | **Weapon / Tools** | | **Activity** |
| | | Entry | Exit | Security |

**MO**

## VICTIM

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **# of Victims** 0 | **Type:** | | **Injury:** | | | **Domestic: N** | | |

| | **Victim/Business Name (Last, First, Middle)** | **Victim of Crime #** | **DOB** Age | **Race** | **Sex** | **Relationship To Offender** | **Resident Status** | **Military Branch/Status** |
|---|---|---|---|---|---|---|---|---|
| **V1** | | | | | | | | |

| **Home Address** | **Home Phone** |
|---|---|
| | |

| **Employer Name/Address** | **Business Phone** | **Mobile Phone** |
|---|---|---|
| | | |

| **VYR** | **Make** | **Model** | **Style** | **Color** | **Lic/Lis** | **VIN** |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHERS INVOLVED

**CODES:  V- Victim (Denote V2, V3)  O = Owner (if other than victim)  R = Reporting Person (if other than victim)**

| **Type:** INDIVIDUAL (NOT A LE OFFICER) | | | **Injury:** | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Code** RP | **Name (Last, First, Middle)** KLEIN, LINDA ISSERLIS | **Victim of Crime #** | **DOB** 09/22/1942 Age 67 | **Race** W | **Sex** F | **Relationship To Offender** | **Resident Status** Resident | **Military Branch/Status** |

| **Home Address** 9200 Sw 71st Av  Village Of Pinecrest, FL 33156 | **Home Phone** 305-666-7700 |
|---|---|
| **Employer Name/Address** | **Business Phone** / **Mobile Phone** |

| **Type:** INDIVIDUAL (NOT A LE OFFICER) | | | **Injury:** | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Code** IO | **Name (Last, First, Middle)** SCHOENWALDER, KARL ALAN | **Victim of Crime #** | **DOB** 05/22/1952 Age 58 | **Race** W | **Sex** M | **Relationship To Offender** | **Resident Status** Resident | **Military Branch/Status** |

| **Home Address** 9220 Sw 71st Av  Pinecrest, FL 33156 | **Home Phone** |
|---|---|
| **Employer Name/Address** SELF (HANDYMAN) | **Business Phone** / **Mobile Phone** |

## PROPERTY

**L = Lost   S = Stolen   R = Recovered   D = Damaged   Z = Seized   B = Burned   C = Counterfeit / Forged   F = Found**
**("OJ" = Recovered for Other Jurisdiction)**

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| **Officer/ID#** GAY, V. (VG1383) | | |
|---|---|---|
| **Invest ID#** (0) | **Supervisor** BRIDGES, T. (JB0092) | |
| **Status** **Complainant Signature** | **Case Status** Inactive  08/11/2010 | **Case Disposition:** | **Page 1** |

| | | |
|---|---|---|
| Printed By: LARGAESPADA, RECORDS1 | Syst: 67440 | 09/07/2010 11:00:56 |

# Incident Report Additional Name List

*Village Of Pinecrest Police Dept.*

OCA: *10-03360*

Additional Name List — Page 2

| | NameCode/# | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|
| 1) | RP 2 | *NICHOLS, JUDY ANN* | | 05/11/1962 | 48 | W | F |
| | Address | 9220 Sw 71st Av , Village Of Pinecrest, FL 33156- | | H: 305-665-7575 | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 2) | IO 2 | *SCHOENWALDER, DEBBIE* | | | 00 | W | F |
| | Address | , | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 3) | IO 3 | *Juvenile* | | | | | |
| | Address | | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 4) | IO 4 | *NICHOLS, JUDY ANN* | | 05/11/1962 | 48 | W | F |
| | Address | 9220 Sw 71st Av , Village Of Pinecrest, FL 33156- | | H: 305-665-7575 | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |
| 5) | IO 5 | *SCHOENWALDER, ALAN-KARL* | | | | W | M |
| | Address | , | | H: | | | |
| | Empl/Addr | | | B: | | | |
| | | | | Mobile #: | | | |

## INCIDENT/INVESTIGATION REPORT
Page 3

By: LARGAESPADA, RECORDS1

*Village Of Pinecrest Police Dept.*

Case# 10-03360

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |
|---|---|---|---|---|---|---|---|---|

| | UCR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
|---|---|---|---|---|---|---|
| D | | | | | | |
| R | | | | | | |
| U | | | | | | |
| G | | | | | | |
| S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Assisting Officers**

*BADILLO, S. (SB1220), BRIDGES, T. (JB0092), HARVEY, C. (CH1382), MARTINEZ, A. (AM1361), POVEDA, R. (RP1399), RODRIGUEZ, M. (MR1342), SETTER, H. (HS1384), SUAREZ, J. (JS1393)*

**Suspect Hate / Bias Motivated:**   *None*

**NARRATIVE**

ON AUGUST 11, 2010, AT APPROXIMATELY 4:10 PM, I RESPONDED TO 9200 SW 71 AVE. REFERENCE A SUPPLEMENT REPORT.

UPON ARRIVAL CONTACT WAS MADE WITH LINDA ISSERLIS KLIEN AND JUDY ANA NICHOLS. KLIEN STATED SHE WAS IN CONTACT WITH MERLIN, SECRETARY, WITH THE PINECREST POLICE DEPARTMENT. AS A RESULT OF THE CONVERSATION, I WAS DISPATCHED TO THE RESIDENCE.

KLIEN STATED THE POLICE CAME TO HER RESIDENCE, PREVIOUSLY, ON SUNDAY 08/08/2010 REFERENCE A SEPARATE INCIDENT.

ON WEDNESDAY, AUGUST 11, 2010 SHE WANTED TO GIVE AN UPDATE OF INFORMATION SHE HAD REGARDING KARL-ALAN SCHOENWALDER, (OFFENDER 1), FROM THE REPORT ON SUNDAY 08/08/2010.

ALSO NICHOLS STATED SHE WANTED TO HAVE KARL-ALAN SCHOENWALDER AND HIS FAMILY REMOVED FROM HER HOME BECAUSE THEY WERE NOT ALLOWED TO LIVE THERE AND THEY WOULD NOT ALLOW HER ACCESS INTO HER HOME.

ON APPROXIMATELY THE ENDING OF JUNE 2010 AND THE BEGINNING OF JULY 2010 KLIEN AND NICHOLS SAID THEY WERE INSIDE OF KLIEN'S RESIDENCE 9200 SW 71 AVE WHEN THERE WAS A KNOCK AT THE DOOR LOCATED NEAR THE BREAKFAST NOOK, WHICH IS ON THE NORTHEAST END OF THE HOME. CONTACT WAS MADE WITH A KARL-ALAN AND DEBBIE SCHOENWALDER, WHO SAID THEY WERE SENT TO THE RESIDENCE BY A DR. GARY TONGSKI (NATURALIST DOCTOR), TO AIDE KLIEN WITH SOME HEALTHY EATING REFERENCE HER HEALTH ISSUES. A TERM OF 21 DAYS.

KLEIN HAD PREVIOUSLY AND RECENTLY BEEN REFERRED TO DR. TONGSKI BY HER DAUGHTER.

IN RETURN KARL-ALAN ASKED KLIEN IF SHE WOULD PROVIDE HIM AND HIS FAMILY WITH ROOM AND BOARD. THEREFORE THE PARTIES KLIEN, NICHOLS, AND SCHOENWALDER, ALL MADE AN AGREEMENT (SEE VIA COLLECTED DOCUMENTS) FOR A SWAPPING OF SERVICES FOR PERIOD OF 5 WEEKS.

HOWEVER THE AGREEMENT WAS MADE FOR THEM TO STAY AT 9200 SW 71 AVE AND NOT AT 9220 SW 71 AVE WHERE THEY WERE LOCATED.

Narr. (cont.) OCA: 10-03360

*Village Of Pinecrest Police Dept.*

Page 4

DURING THE CONTRACT KLIEN STATED KARL-ALAN AND DEBBIE TRIED TO PERSUADE HER AND NICHOLS TO BUY THEM AIR PLANE TICKETS TO COLORADO WHERE THEY SAID THEIR DAUGHTER WAS GETTING MARRIED. WHEN THAT DID NOT OCCUR KLIEN STATED THE AGREEMENT ON KARL-ALAN'S BEHALF BEGAN TO DETERIORATE, ALTHOUGH SHE AND NICHOLS KEPT THEIR END OF THE CONTRACT CURRENT.

TWO WEEKS PRIOR TO THE END OF THE CONTRACT JULY 2010, WHICH CONCLUDED WITH A CHURCH SERVICE AT 9220 SW 71 AVE. A NOTICE TO VACATE THE PREMISES (SEE DOCUMENT COLLECTED) WAS ISSUED TO KARL-ALAN AND HIS FAMILY.

AT THE CLOSE OF THE CONTRACT AND THE NOTICE TO VACATE THE PREMISES, KARL-ALAN AND HIS FAMILY DECLINED TO LEAVE THE PREMISES. KARL-ALAN WOULD NOT ALLOW NICHOLS ACCESS TO HER HOME STATING THAT SHE WAS INVADING HIS FAMILY'S PRIVACY.

DETECTIVE. A. MARTINEZ HAD BEEN IN CONTACT AND WAS AWARE OF THE INCIDENT SINCE ITS BEGINNING REFERENCE THE CASE ON SUNDAY 08/08/2010. MARTINEZ AND SGT. BADILLO BOTH RESPONDED TO THE RESIDENCE 9200 SW 71 AVE.

AFTER SOMETIME, SGT. BADILLO AND DET. MARTINEZ HAD OTHER UNITS RESPONDED TO THE RESIDENCE AND ALL UNITS WERE BRIEFED REFERENCE THE TRESPASS WARNING. .

BEFORE ANY ACTION COULD BE TAKEN KARL- ALAN AND HIS FAMILY HAD COME OUT OF THE RESIDENCE AND CONTACT WAS MADE BY VARIOUS OFFICERS.

ALAN WAS TOLD THAT THEY NEEDED TO LEAVE THE RESIDENCE REFERENCE THE CONTRACT BETWEEN HIM AND THE COMPLAINANTS HAD EXPIRED. ALAN SAID THAT THEY HAD ALREADY PACKED THEIR THINGS AND JUST NEED TO LOAD THEM ONTO THEIR TRAILER.

TWO OFFICERS AND DET. MARTINEZ STOOD BY WHILE THEY LOADED THE ITEMS. WHICH TOOK APPROXIMATELY 2 HOURS.

AFTER LOADING THEIR ITEMS ONTO THEIR TRAILER A TRESPASS WARNING WAS ISSUED TO KARL-ALAN, DEBBIE AND THEIR 14 YEAR OLD SON (SCHOENWALDER). TO VACATE THE RESIDENCE BECAUSE THEY WERE NOT WELCOMED THERE AND THEY WERE DENYING THE OWNER ACCESS TO HER PROPERTY AFTER BEING TOLD THEY COULDN'T LIVE THERE.

CASE CARDS WERE ISSUED TO ALL INVOLVED BY MYSELF.

OTHER OFFICERS ON THE SCENE INCLUDED, SGT. BRIDGES, OFC. POVEDA, OFC. HARVEY, OFC, SETTER, OFC. RODRIGUEZ, AND OFC. SUAREZ.

NOTE: REFERENCE CASE # 10-03318 THE OFFENDERS IDENTITIES COULD NOT BE CONFIRMED.

KARL-ALAN STATED HE WOULD RETURN LATER THAT EVENING WITH A TRUCK TO REMOVE HIS TRAILER FROM THE PROPERTY OF 9220 SW 71 AVE.

KARL-ALAN WAS NOT TO RETURN TO THE PROPERTY WITHOUT CONTACTING THE PINECREST POLICE FIRST.

ALSO NICHOLS AND KLIEN WERE TOLD BY SGT. BRIDGES TO CONTACT THE PINECREST POLICE DEPARTMENT TOMMORROW IF THE TRIALER IS NOT REMOVED FROM THE PROPERTY ON THAT EVENING.

KARL-ALAN HAD IN HIS POSSESSION A RUGER 357 MAGNUM WEAPON. THE WEAPON WAS CHECKED VIA DISPATCH AND CHECKED BACK WITH NO WANTS OR ISSUES.

## INCIDENT/INVESTIGATION REPORT

Narr. (cont.)  OCA: 10-03360        *Village Of Pinecrest Police Dept.*        Page 5

VICTIM WITNESS STATEMENTS TO BE COLLECTED.

# Notice to Vacate Premises

July 24, 2010

In response to the Notice of Cancellation dated July 22, 2010, received from Karl and Debi Alan, canceling the July 15, 2010 Services for Rent Agreement between Karl and Debi Alan, Judy Nichols and Linda Klein, TWO WEEKS NOTICE IS HEREBY GIVEN to the Alan family to vacate the premises at 9220 S.W. 71 Avenue, Miami, FL 33156, presently occupied by them under the terms of the above-referenced Services for Rent Agreement.

_____          _____
Linda Klein                      Judy Nichols

**Services for Rent Agreement with Karl and Debi Alan (including son, Levi) Regarding services to Be Provided to Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave., Miami, FL 33156**

Responsibilities - KARL:
    Initial special jobs (to be completed within the first 5 weeks):
        Install a/c compressor
        Install pool/spa heater, relocating propane tank to comply with code
        Connect generator
        Repair and reinforce tiki hut
        Plant garden and food bearing plants and trees in designated areas
    Ongoing duties:
        Maintain exterior of both houses (keeping doors and walls clean, painting when necessary)
        Maintain grounds, decks garden
        Keep pools & hot tubs sparkling clean
        Maintain all equipment in good working order
        Shop for daily food, water, soap and paper goods for all occupants of both houses
            (keeping the food cost down to $60 per person per week by purchasing cases
            at a discount as you represented you are able to do)
        Empty trash; put cans out on Sunday & Wednesday nights; set up and maintain composting
    Do all reasonable lifting, carrying and moving upon request
        Clean Judy and Linda's cars inside and out, alternating one car per week
        Storm preparation and clean-up afterwards

Ongoing Duties - DEBI:
    Prepare and serve all meals and snacks to all occupants of both houses
    Prepare and serve food for special events
    Do all clean up related to food
    Oversee Karl with planting and growing garden
    Pick food from garden
    Help with cleaning or laundry chores when necessary or when Verna is unavailable
    Shop for food for special events

Ongoing Duties - LEVI:
    Help parents as requested
    Perform any computer-related tasks as requested to his best abilities

Benefits to be received by the Alan Family in exchange for rendering above services:
    An enclosed place for parking their trailer
    A place to sleep and bathe
        Initially at 9200 SW 71 Ave. (location subject to change at Linda Klein's discretion)
        Karl & Debi in corner studio (between 8:00 p.m. and 6:30 a.m. only)
        Levi in the small bed in Linda's office (between 8:00 p.m. and 7:00 a.m.)
        Note: the breakfast room table at 9220 can be used for daytime computer work
    Use of washer and dryer at 9220 house
    Food for the first 5 weeks, starting 7/2/10
        Continued provision of food plus opportunity for monetary gain contingent upon regular income from
    detox customers exceeding $8000 per month.

It is understood that from time to time the Alan family will need personal days or teaching days. This will be allowed provided that acceptable alternate arrangements are made for fulfilling their duties. Dates will be scheduled in advance. This Agreement may be modified by written addendum signed by all parties or can be canceled with two weeks notice from any party to the Agreement. It is understood that the Alans will have no guests or visitors unless specific prior approval has been given by Linda Klein. Effective date: July 2, 2010. Signatures below indicate agreement with all terms herein.


_____    _____    _____    _____
Karl Alan                    Debi Alan                Judy Nichols           Linda Klein

# **Addendum/ Amendment**

July 21, 2010

RE: Contract between Karl Alan, Debi Alan, Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave, Miami, Florida

This is our two week notice of ADDENDUM per the contract dated July 2, 2010 titled SERVICES FOR RENT AGREEMENT WITH KARL AND DEBI ALAN...

**Responsibilities – Karl & Debi**
Prepare all meals and snacks to all occupants of both houses.
Prepare all food for special events.
Plant edible garden and harvest bounty thereof for the household.
Karl may help Levi with yard and building maintenance from time to time if his schedules permit, and be compensated at $20.00 hourly at ¼ hour increments.

**Responsibilities – Levi**
Perform all light yard maintenance and light building maintenance and be compensated $10.00 hourly at ¼ hour increments (lawn cutting, weeding, tree and shrub trimming (within reach), pool and spa cleaning and chemical adjustments, minor repairs/minor painting).
Perform Wellness Center - Website building and maintenance and be compensated at $20/hour.

**Benefits:**
Food: to be continued as long as they work at the Wellness Center.
Personal Allowance: $50 per week to Karl & Debi for personal allowance until wellness center exceeds $8000 per month from center patients.
Lodging: to be at the 9220 address in the Master Bedroom with private bath.

SIGNED AND DATED THIS 21ˢᵗ DAY OF JULY IN THE YEAR OF MESSIAH 2010 (Gregorian)

| | | | |
|---|---|---|---|
| Karl Alan | Debi Alan | Judy Nichols | Linda Klein |

## Notice of Cancellation

July 19, 2010

RE: Contract between Karl Alan, Debi Alan, Linda Klein and Judy Nichols at 9200 ^& 9220 S.W. 71 Ave, Miami, Florida

This is our two week notice of cancellation to our signatures on the contract dated July 2, 2010 titled SERVICES FOR RENT AGREEMENT WITH KARL AND DEBI ALAN...

_____
Karl Alan

_____
Debi Alan

August 6, 2010

To Karl and Debi Alan

Re: <u>Your failure to fulfill your obligations under the Services for Rent Agreement dated July 2, 2010 (copy attached)</u>

Dear Karl and Debi,

As you are both aware, this afternoon Karl informed me that he has no intention of completing work you and he had agreed to perform in exchange for 5 weeks of fully furnished housing, organic food, water and electricity for your family. I want to set the record straight:

I have today asked you to stay on a couple more days to complete the work that you entered into a covenant to provide. Regrettably, you both claimed that you have no duty to complete the promised work on the grounds that you did not complete it within the 5-week timeframe (which you had agreed was ample). The fact is that Karl chose not to begin work on any of the "Initial special jobs" listed in the Agreement until the fourth week of the 5-week Agreement – an agreement between Judy, myself, and the two of you, which we all signed on July 2nd *after you had revised the terms to suit you.* After signing that Agreement 35 days ago, Judy and I fulfilled our end of the bargain each and every week.

Now, you say that you are leaving tomorrow: (1) without completing the installation of the pool heater which the Agreement requires you to install; (2) without removing stains that you, yourself, made on the basketball court, which will now require repainting; (3) without repairing the courtyard screens that you, yourself, damaged; (4) without installing new posts for the chickee hut – not only is this repair part of our written agreement -- you, yourself, even delivered the new posts here so that you could install them. (You charged $40 for that delivery); (5) without repairing a hot tub jet that got pushed out of place when your son, Levi, used a pressure washer instead of a rag to clean the hot tub – you said today that repairing that jet would take you no more than an hour, yet you intend to leave it broken; (6) without moving the canopied 4-person swing back to the place in the yard from which you moved it. (7) without cleaning our swimming pools which are now sorely in need of cleaning due to your failure to clean them weekly as required by in the agreement you signed; (8) without cutting the lawn, a task you agreed in writing to perform weekly. Today is August 6th. You have neither cleaned the swimming pools nor cut the grass since July 22nd!

No one other than God can hold you accountable -- You have been forced out of your Christian congregation; you have given up your U.S. citizenship; you have even "turned in" your social security numbers! Clearly, you have arranged your lives so that you are accountable to no one but God. I pray you will decide to do right by Him! You say that you "are not about money" yet you, Karl, have asked me to pay you $75 per hour to finish the work you started and agreed in writing that you would complete.

Not only have Judy and I fulfilled all that we promised you, we have given you more than we promised. Today, I spent many hours driving you places you wanted to go but had no way of accessing because your "car is in the shop." You have been claiming that ever since your arrival here! Why did you sign an agreement requiring you to do all the grocery shopping when you secretly knew that you have no means for fulfilling that duty unless Judy or I drove you?! I have also supplied you and your family with <u>SIX</u> weeks of organic food, rather than five weeks as required by the terms of our written agreement. Our weekly food shopping dates were:

1. Saturday, July 3      Glaser – Coconut Grove
2. Saturday, July 10     Glaser – Coconut Grove
3. Saturday, July 17     Glaser – Coconut Grove
4. Tuesday, July 20      Glaser Farm
5. Tuesday, July 27      Glaser Farm
6. Tuesday, August 3     Whole Foods

Apart from the above, I purchased additional food for you and your family on July 6; July 15; July 17; July 18; July 21; July 22; and today, August 6.

You hold yourselves out to be children of God, so I pray that you will reconsider and decide to fulfill your obligations to Judy and me. That is without question the Godly thing to do.

I have prepared a checklist of items that were made available to you during your stay in Judy's house – items that you must return before you leave. I will not be available to review this list with you on the Sabbath, so you are hereby authorized to delay your departure until Sunday.

*Linda*

**Services for Rent Agreement with Karl and Debi Alan (including son, Levi) Regarding services to  Be Provided to Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave., Miami, FL 33156**

Responsibilities - KARL:
    Initial special jobs (to be completed within the first 5 weeks):
        Install a/c compressor
        Install pool/spa heater, relocating propane tank to comply with code
        Connect generator
        Repair and reinforce tiki hut
        Plant garden and food bearing plants and trees in designated areas
    Ongoing duties:
        Maintain exterior of both houses (keeping doors and walls clean, painting when necessary)
        Maintain grounds, decks garden
        Keep pools & hot tubs sparkling clean
        Maintain all equipment in good working order
        Shop for daily food, water, soap and paper goods for all occupants of both houses
            (keeping the food cost down to $60 per person per week by purchasing cases
            at a discount as you represented you are able to do)
        Empty trash; put cans out on Sunday & Wednesday nights; set up and maintain composting
        Do all reasonable lifting, carrying and moving upon request
        Clean Judy and Linda's cars inside and out, alternating one car per week
        Storm preparation and clean-up afterwards

Ongoing Duties - DEBI:
        Prepare and serve all meals and snacks to all occupants of both houses
        Prepare and serve food for special events
        Do all clean up related to food
        Oversee Karl with planting and growing garden
        Pick food from garden
        Help with cleaning or laundry chores when necessary or when Verna is unavailable
        Shop for food for special events

Ongoing Duties - LEVI:
        Help parents as requested
        Perform any computer-related tasks as requested to his best abilities

Benefits to be received by the Alan Family in exchange for rendering above services:
        An enclosed place for parking their trailer
        A place to sleep and bathe
            Initially at 9200 SW 71 Ave. (location subject to change at Linda Klein's discretion)
            Karl & Debi in corner studio (between 8:00 p.m. and 6:30 a.m. only)
            Levi in the small bed in Linda's office (between 8:00 p.m. and 7:00 a.m.)
            Note: the breakfast room table at 9220 can be used for daytime computer work
        Use of washer and dryer at 9220 house
        Food for the first 5 weeks, starting 7/2/10
            Continued provision of food plus opportunity for monetary gain contingent upon regular income from
        detox customers exceeding $8000 per month.

It is understood that from time to time the Alan family will need personal days or teaching days. This will be allowed provided that acceptable alternate arrangements are made for fulfilling their duties. Dates will be scheduled in advance. This Agreement may be modified by written addendum signed by all parties or can be canceled with two weeks notice from any party to the Agreement. It is understood that the Alans will have no guests or visitors unless specific prior approval has been given by Linda Klein. Effective date: July 2, 2010. Signatures below indicate agreement with all terms herein.

_____    _____    _____    _____
Karl Alan                 Debi Alan             Judy Nichols           Linda Klein

August 6, 2010

To Karl and Debi Alan

Re: <u>Your failure to fulfill your obligations under the Services for Rent Agreement dated July 2, 2010 (copy attached)</u>

Dear Karl and Debi,

As you are both aware, this afternoon Karl informed me that he has no intention of completing work you and he had agreed to perform in exchange for 5 weeks of fully furnished housing, organic food, water and electricity for your family. I want to set the record straight:

I have today asked you to stay on a couple more days to complete the work that you entered into a covenant to provide. Regrettably, you both claimed that you have no duty to complete the promised work on the grounds that you did not complete it within the 5-week timeframe (which you had agreed was ample). The fact is that Karl chose not to begin work on any of the "Initial special jobs" listed in the Agreement until the fourth week of the 5-week Agreement – an agreement between Judy, myself, and the two of you, which we all signed on July 2nd *after you had revised the terms to suit you.* After signing that Agreement 35 days ago, Judy and I fulfilled our end of the bargain each and every week.

Now, you say that you are leaving tomorrow: (1) without completing the installation of the pool heater which the Agreement requires you to install; (2) without removing stains that you, yourself, made on the basketball court, which will now require repainting; (3) without repairing the courtyard screens that you, yourself, damaged; (4) without installing new posts for the chickee hut – not only is this repair part of our written agreement -- you, yourself, even delivered the new posts here so that you could install them. (You charged $40 for that delivery); (5) without repairing a hot tub jet that got pushed out of place when your son, Levi, used a pressure washer instead of a rag to clean the hot tub – you said today that repairing that jet would take you no more than an hour, yet you intend to leave it broken; (6) without moving the canopied 4-person swing back to the place in the yard from which you moved it. (7) without cleaning our swimming pools which are now sorely in need of cleaning due to your failure to clean them weekly as required by in the agreement you signed; (8) without cutting the lawn, a task you agreed in writing to perform weekly. Today is August 6th. You have neither cleaned the swimming pools nor cut the grass since July 22nd!

No one other than God can hold you accountable -- You have been forced out of your Christian congregation; you have given up your U.S. citizenship; you have even "turned in" your social security numbers! Clearly, you have arranged your lives so that you are accountable to no one but God. I pray you will decide to do right by Him! You say that you "are not about money" yet you, Karl, have asked me to pay you $75 per hour to finish the work you started and agreed in writing that you would complete.

Not only have Judy and I fulfilled all that we promised you, we have given you more than we promised. Today, I spent many hours driving you places you wanted to go but had no way of accessing because your "car is in the shop." You have been claiming that ever since your arrival here! Why did you sign an agreement requiring you to do all the grocery shopping when you secretly knew that you have no means for fulfilling that duty unless Judy or I drove you?! I have also supplied you and your family with SIX weeks of organic food, rather than five weeks as required by the terms of our written agreement. Our weekly food shopping dates were:

1. Saturday, July 3        Glaser – Coconut Grove
2. Saturday, July 10      Glaser – Coconut Grove
3. Saturday, July 17      Glaser – Coconut Grove
4. Tuesday, July 20       Glaser Farm
5. Tuesday, July 27       Glaser Farm
6. Tuesday, August 3      Whole Foods

Apart from the above, I purchased additional food for you and your family on July 6; July 15; July 17; July 18; July 21; July 22; and today, August 6.

You hold yourselves out to be children of God, so I pray that you will reconsider and decide to fulfill your obligations to Judy and me. That is without question the Godly thing to do.

I have prepared a checklist of items that were made available to you during your stay in Judy's house – items that you must return before you leave. I will not be available to review this list with you on the Sabbath, so you are hereby authorized to delay your departure until Sunday.

*Linda*

**Services for Rent Agreement with Karl and Debi Alan (including son, Levi) Regarding services to  Be Provided to Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave., Miami, FL 33156**

Responsibilities - KARL:
    Initial special jobs (to be completed within the first 5 weeks):
        Install a/c compressor
        Install pool/spa heater, relocating propane tank to comply with code
        Connect generator
        Repair and reinforce tiki hut
        Plant garden and food bearing plants and trees in designated areas
    Ongoing duties:
        Maintain exterior of both houses (keeping doors and walls clean, painting when necessary)
        Maintain grounds, decks garden
        Keep pools & hot tubs sparkling clean
        Maintain all equipment in good working order
        Shop for daily food, water, soap and paper goods for all occupants of both houses
            (keeping the food cost down to $60 per person per week by purchasing cases
            at a discount as you represented you are able to do)
        Empty trash, put cans out on Sunday & Wednesday nights, set up and maintain composting
        Do all reasonable lifting, carrying and moving upon request
        Clean Judy and Linda's cars inside and out, alternating one car per week
        Storm preparation and clean-up afterwards

Ongoing Duties - DEBI:
    Prepare and serve all meals and snacks to all occupants of both houses
    Prepare and serve food for special events
    Do all clean up related to food
    Oversee Karl with planting and growing garden
    Pick food from garden
    Help with cleaning or laundry chores when necessary or when Verna is unavailable
    Shop for food for special events

Ongoing Duties - LEVI:
    Help parents as requested
    Perform any computer-related tasks as requested to his best abilities

Benefits to be received by the Alan Family in exchange for rendering above services:
    An enclosed place for parking their trailer
    A place to sleep and bathe
        Initially at 9200 SW 71 Ave. (location subject to change at Linda Klein's discretion)
            Karl & Debi in corner studio (between 8:00 p.m. and 6:30 a.m. only)
            Levi in the small bed in Linda's office (between 8:00 p.m. and 7:00 a.m.)
            Note: the breakfast room table at 9220 can be used for daytime computer work
    Use of washer and dryer at 9220 house
    Food for the first 5 weeks, starting 7/2/10
        Continued provision of food plus opportunity for monetary gain contingent upon regular income from
        detox customers exceeding $8000 per month.

It is understood that from time to time the Alan family will need personal days or teaching days. This will be allowed
provided that acceptable alternate arrangements are made for fulfilling their duties. Dates will be scheduled in advance.
This Agreement may be modified by written addendum signed by all parties or can be canceled with two weeks notice from
any party to the Agreement. It is understood that the Alans will have no guests or visitors unless specific prior approval has
been given by Linda Klein.  Effective date: July 2, 2010.  Signatures below indicate agreement with all terms herein.

_____    _____    _____    _____
Karl Alan                  Debi Alan              Judy Nichols           Linda Klein

**Services for Rent Agreement with Karl and Debi Alan (including son, Levi) Regarding services to  Be Provided to Linda Klein and Judy Nichols at 9200 & 9220 S.W. 71 Ave., Miami, FL 33156**

Responsibilities - KARL:
    Initial special jobs (to be completed within the first 5 weeks):
        ✓Install a/c compressor
        ✓ Install pool/spa heater, relocating propane tank to comply with code
        ✓ Connect generator
        ✗ Repair and reinforce tiki hut
      ✓✗ Plant garden and food bearing plants and trees in designated areas
    Ongoing duties:
        Maintain exterior of both houses (keeping doors and walls clean, painting when necessary)
        Maintain grounds, decks garden
        Keep pools & hot tubs sparkling clean
        Maintain all equipment in good working order
        Shop for daily food, water, soap and paper goods for all occupants of both houses
            (keeping the food cost down to $60 per person per week by purchasing cases
            at a discount as you represented you are able to do)
        Empty trash; put cans out on Sunday & Wednesday nights; set up and maintain composting
        Do all reasonable lifting, carrying and moving upon request
        Clean Judy and Linda's cars inside and out, alternating one car per week
        Storm preparation and clean-up afterwards

Ongoing Duties - DEBI:
        Prepare and serve all meals and snacks to all occupants of both houses
        Prepare and serve food for special events
        Do all clean up related to food
        Oversee Karl with planting and growing garden
        Pick food from garden
        Help with cleaning or laundry chores when necessary or when Verna is unavailable
        Shop for food for special events

Ongoing Duties - LEVI:
        Help parents as requested
        Perform any computer-related tasks as requested to his best abilities

Benefits to be received by the Alan Family in exchange for rendering above services:
        An enclosed place for parking their trailer
        A place to sleep and bathe
            Initially at 9200 SW 71 Ave. (location subject to change at Linda Klein's discretion)
            Karl & Debi in corner studio (between 8:00 p.m. and 6:30 a.m. only)
            Levi in the small bed in Linda's office (between 8:00 p.m. and 7:00 a.m.)
            Note: the breakfast room table at 9220 can be used for daytime computer work
        Use of washer and dryer at 9220 house
        Food for the first 5 weeks, starting 7/2/10
            Continued provision of food plus opportunity for monetary gain contingent upon regular income from
        detox customers exceeding $8000 per month.

It is understood that from time to time the Alan family will need personal days or teaching days. This will be allowed
provided that acceptable alternate arrangements are made for fulfilling their duties. Dates will be scheduled in advance.
This Agreement may be modified by written addendum signed by all parties or can be canceled with two weeks notice from
any party to the Agreement. It is understood that the Alans will have no guests or visitors unless specific prior approval has
been given by Linda Klein.  Effective date: July 2, 2010.  Signatures below indicate agreement with all terms herein.

| | | | |
|---|---|---|---|
| Karl Alan | Debi Alan | Judy Nichols | Linda Klein |

8/6/2010          9:15 A.M.

Karl, please make sure that the pool heater has been properly connected to both the
pool and the spa, as this model heater is designed to do. It appears to me that you
may have connected the pool heater to the spa only and not to the swimming pool.

*Linda*

From:
<u>Karl Alan Schonwalder</u>
<u>c/o 8904 SW 22nd Street</u>
<u>Boca Raton, Florida</u>

## CERTIFICATION OF SERVICE/MAILING

The undersigned state as follows:

I_____ have been authorized by the above named party to serve the following
party(s);
1) Linda Isserlis Klein (a.k.a. Linda Carol Klein), 9200 SW 71st Street, Pinecrest, Florida
2) Judy Ann Nichols, 9220 SW 71st Street, Pinecrest, Florida
3) Sergio Izaguirre, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
4) Phillip Martin, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
5) Peter G. Lombardi, Village Manager, 12645 Pinecrest Parkway, Pinecrest, Florida
6) Gary Spence, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
7) Ivan Osores, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
8) John R. Hohensee, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
9) James Bridges, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
10) Jason Cohen, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
11) Craig Harvey, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
12) Cindy Lerner, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
13) Alexandra Martinez, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
14) Derrick Bowman, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
15) Reynaldo Poveda, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
16) Sigfredo Badillo, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
17) Maikel Rodriguez, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
18) Juan Suarez, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
19) Heather Setter, c/o Village of Pinecrest Police Department, 12645 Pinecrest Parkway, Pinecrest, Florida
20) Steven M. Larimore, DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF
FLORIDA, 400 North Miami Avenue, Room 8N09, Miami Florida
21) The United States Attorney's Office, WIFREDO A. FERRER, 500 S.Australian Ave. Ste. 400, West Palm Beach,
Florida
22) Federal Bureau of Investigation, Special Agent in Charge, John V. Gillies, 16320 NW 2nd Avenue, North Miami
Beach, Florida
23) Eric H. Holder, Jr., Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania
Avenue, NW, Washington, District of Columbia

☐   PROOF OF SERVICE; I personally served copies of the following stated documents or other as identified: ___
_____

☐   PROOF OF MAILING; I deposited copies of the following stated document(s) with the USPO in sealed
envelopes, first class postage paid and addressed to the above names and addresses:  _AN INFORMATION-
PETITION FOR REDRESS OF GRIEVANCES; CERTIFICATION OF SERVICE/MAILING_

<u>This signer acknowledges that the forgoing is true, correct and certain, materially complete, relevant and not misleading</u>

<u>on this</u> _____day of _____ in the year of our Savior _____ on/at _____,

_____ before the undersigned witnesses.


_____        _____        _____
Signer:                        Witness:                       Witness:

(Please print full name below signature)

Karl Alan Schonwalder
Within United States of America
c/o 8904F Southwest 22 Street
Boca Raton, Florida